# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Joseph Bratcher, <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )     1:16cv224 (AJT/IDD) |
| | ) |
| Hampton Roads Regional Jail, et al., <br>     Defendants. | ) <br> ) |

## MEMORANDUM OPINION

Joseph Bratcher, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated when he was placed into protective custody at Hampton Roads Regional Jail ("HRRJ"). By Order dated April 7, 2016, plaintiff was advised that his complaint did not conform to all the requirements for § 1983 civil actions and directed to provide additional information in a particularized and amended complaint. Dkt. No. 3. Rather than avail himself of the opportunity to file an amended complaint, plaintiff chose to file a Motion for Reconsideration and a Renewed Motion for Reconsideration, with supporting memoranda, arguing that his claims were adequately pleaded. Dkt. Nos. 5–6, 12–13. Thus, plaintiff's original complaint was deemed filed and served on defendants Superintendent Simons and Sergeant Whitehead on January 10, 2017. Dkt. No. 14. On March 14, 2017, defendants filed a Motion to Dismiss plaintiff's complaint, along with a supporting brief and the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. Dkt. Nos. 18-20. After being granted extensions of time to respond, plaintiff filed his opposition to the Motion to Dismiss on September 28, 2017. Dkt. No. 32. This matter is now ripe for adjudication. For the reasons that follow, defendants' Motion to Dismiss will be granted and this civil action will be closed.

# I. Background

Plaintiff alleges that while he was a pretrial detainee at Hampton Roads Regional Jail ("HRRJ"), he encountered an "array of problems," which he complained about using the inmate grievance system. Compl. at ¶¶ 2, 8. Plaintiff contends, based on "information and belief," that his complaints were known to defendant Simon. Id. at ¶ 9.

On or about March 10, 2014, plaintiff allegedly complained "to the officer on duty that his cellmate had made threats to him and [he] asked what could be done to move [him] into a different cell." Id. at ¶ 10. After he spoke with a supervising officer regarding the threats, plaintiff was allegedly directed to report to the gym. Id. at ¶¶ 11–13. Twenty minutes later, defendant "Whitehead came to the gym door yelling an order [for plaintiff] to 'turn around' and 'put [his] hands behind [his] back and through the hole [in the door]." Id. at ¶ 14. According to plaintiff, when he asked Whitehead "what was going on," Whitehead threatened plaintiff with "charges" and told him to "shut up." Id. ¶ 15. Plaintiff states that Whitehead then pulled plaintiff's hands though the hole in the door and handcuffed him. Id. at ¶ 16. Plaintiff alleges that he was "pulled" through the gym door and "yelled at," as he was being moved out of the gym. Id. ¶ 18.

Plaintiff was then allegedly "handed over" to two unnamed officers and advised that he was being taken to segregation and that the handcuffs were "for [his] safety." Id. at ¶ 21. Plaintiff states that when he asked the officers "what he had done wrong" he was advised not to "cause problems." Id. at ¶ 22. Plaintiff alleges that when he inquired into "how the handcuffs were for his safety," he was told "they keep you safe" and when he inquired whether he was considered a threat to himself or others, he did not receive a response. Id. at ¶¶ 23-24. Plaintiff states that he was eventually placed in a segregation cell, advised by Whitehead that "he had charges coming,'" and ordered to sign papers stating that he had feared for his safety and was in "Protective Custody." Id. at ¶¶ 25, 30. Plaintiff alleges that he was advised that he would be

permitted a "phone call to let his people know he was in segregation," but he was never given call. Id. ¶ 27.

According to plaintiff, protective custody was "identical" to disciplinary segregation and involved "23 hour lockdown on weekdays and 24 hour [lockdown] on weekends, no phone calls, showers 3 times a week, and the use of handcuffs every time he left the cell and the loss of all privileges that [the general] population receives." Id. at ¶ 32. Plaintiff asserts that "the use of handcuffs was not based on any kind of individual determination, only on a vague policy of 'for your safety.'" Id. at ¶ 33. Plaintiff states that he filed "request forms and grievance forms trying to get out of segregation and was never responded to." Id. ¶ 31.

In plaintiff's view the defendant's violated his constitutional rights on several grounds:

> (1) the policy of using handcuffs on all segregated inmates violated the Due Process Clause; (2) the policy of 'treat[ing] all segregated inmates as though they were in disciplinary segregation' constituted punishment of a pretrial detainee, in violation of the Due Process Clause; (3) Whitehead's use of forcible restraint on plaintiff in the absence circumstances to warrant it amounted to the excessive use of force; (4) use of restraints on plaintiff while in segregation amounted to the excessive use of force; (5) the foregoing incidents constituted retaliation for plaintiff's use of the inmate grievance system.

Dkt. No. 6 at 6.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Alleged facts are presumed true and a complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 55. A court may dismiss claims based upon dispositive issues of law. Hishon, 467 U.S. at 73.

Where, as here, a complaint is filed by a prisoner acting pro se, it must be construed liberally no matter how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519 (1972). A pro se litigant, thus, is not held to the strict pleading requirements demanded of attorneys, Estelle v. Gamble, 429 U.S. 97, 106–07 (1976), and a court's "power summarily to dismiss a prisoner's pro se complaint is limited." Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). This does not mean district courts are constrained to accept all pro se complaints as sufficiently pleaded: a pro se complaint must still contain sufficient facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" Cosner v. Dodt, 526 F. App'x 252, 253 (4th Cir. 2013) (quoting Twombly, 550 U.S. at 555, 570.

### III. Analysis

As an initial matter, plaintiff contends that his complaint has been reviewed under a "heightened pleading standard" rather than the liberal standard under which complaints by pro se litigants must be construed. Dkt. No. 6 at 6. His contention is belied by the record, which indicates that plaintiff's complaint was liberally construed and, in deference to his pro se status, he was afforded the opportunity to particularize and amend his complaint. Dkt. No. 3 at 2; see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[T]he plaintiff whose factual allegations are

close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint."). Rather than do so, plaintiff opted to file two motions for reconsideration arguing that the complaint was sufficient as written. Dkt. Nos. 5, 13.

The Court's liberal construction of plaintiff's pleadings is further evidenced by the filing and service of plaintiff's complaint. Dkt. No. 14. Plaintiff did not comply with the court's April 7, 2016, Order, which directed him to "particularize and amend his complaint using the enclosed standardized § 1983 form within thirty (30) days of the date of this Order," and advised that "failure to comply with any part of this Order within THIRTY (30) DAYS . . . may result in the dismissal of [his] complaint pursuant to Fed. R. Civ. P. 41(b)." Rather than dismissing the complaint pursuant to Rule 41(b), as it could have done, the Court served it as initially written. Dkt. No. 14; see Medici888, Inc. v. Rileys Ltd., No. 2:12CV317, 2014 WL 4199790, at *2 (E.D. Va. Aug. 22, 2014) ("The Court has authority to dismiss this action, with prejudice, upon its own motion, for Plaintiff's failure . . . to comply with court orders.").

As discussed in further detail below, plaintiff's complaint, even when construed liberally, has failed to state a claim for excessive force or retaliation. See Gladden v. Warden of Elmira, No. C/A9:09615JFABM, 2009 WL 1139992, at *2 (D.S.C. Apr. 27, 2009) ("Although we are bound to liberally construe Plaintiff's pro se complaint, Plaintiff must do more than make conclusory statements to support his claim."); White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (affirming district court's dismissal of plaintiff's suit because plaintiff's complaint "failed to contain any factual allegations tending to support his bare assertion."). Therefore, for the following reasons the complaint will be dismissed with prejudice for failure to state a claim.

### A. Excessive Force

Plaintiff contends that "the Supreme Court's decision in Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015)," invalidated this Court's reasoning and rendered the cases relied on in its April 7, 2016 initial order inapposite. Dkt. No. 6 at 2. Specifically, plaintiff contends that this Court misconstrued the law on plaintiff's excessive force claim when it stated that "the 'core judicial inquiry' under both the Fourteenth and Eighth Amendments is 'whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. According to plaintiff, the Kingsley decision changed the standard applicable to a pretrial detainees, and pursuant to that decision, a prisoner "must show only that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim." Id. at 3. Additionally, plaintiff cites Kingsley for the proposition that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" Id. Plaintiff believes that because he "has stated a claim and demanded a jury trial," "under the Seventh Amendment it is the duty of the jury to decide whether or not the plaintiff has proven that the force was unreasonable." Id.

Plaintiff attempts to distinguish his case from cases cited by defendants on the basis that he was a pre-trial detainee rather than a prisoner confined pursuant to a lawful conviction and dismisses several cases cited by defendants for not sufficiently elucidating their reasoning. Dkt. No. 32 at 2. Plaintiff further argues that the "[l]egitimate interests [of jail officials] and appropriate deference owed [them] are matters for the jury." Id. at 3. In plaintiff's view, he can state a claim merely by alleging "that any force was objectively unreasonable" without "put[ting] forth any evidence," and because he alleged "a relatively small amount of force was used against

him," when none "was needed," he has sufficiently stated a claim for excessive force. Id. at 3–4, 6.

Plaintiff argues that because he "has not had an opportunity to gather evidence supporting his claim . . . , he can only allege those facts to which he has direct knowledge," namely, that he was not a threat to "safety and security." Dkt. No. 32 at 6. The jail policy, which, according to plaintiff's understanding of it, failed to sufficiently take into account his individual circumstances, and therefore, rendered any force used by prison employees unreasonable. Id. Plaintiff further contends that because his segregation was virtually identical to disciplinary segregation, he should have been provided procedural due process protections before his segregation. Id. at 7. Plaintiff allegedly "knows that defendant Simons is the superintendent and has policy making and enforcement authority and that he knowingly allows this unconstitutional policy to continue." Id. at 8. For the following reasons, plaintiff's arguments are without merit.

Claims of excessive force against a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction "the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) ("It is clear, . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.). For any excessive force claim brought under 42 U.S.C. § 1983 a district court must first identify "the specific constitutional right allegedly infringed by the challenged application of force," whether it be the Fourth Amendment's prohibition against unreasonable searches and seizures, the Eighth Amendment's prohibition against excessive force, or the Due Process Clause of the Fourteenth Amendment's prohibition against excessive force amounting to punishment. Graham, 490 U.S. at 394–95. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than

7

some generalized "excessive force" standard. Id. at 394. "[E]xcessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc); Kingsley, 135 S. Ct. at 2473. Under the Fourteenth Amendment standard, a plaintiff must demonstrate that the defendants acted in an objectively unreasonable manner, without regard to their subjective intent. Kingsley, 135 S. Ct. at 2472–73.

A determination of the reasonableness of a defendant's actions is highly fact-dependent, and must take into account the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. at 2473. Moreover, any such inquiry should take into account "the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' " and appropriately defer to jail officials' determinations of which policies and practices "'are needed to preserve internal order and discipline and to maintain institutional security.'" Id. at 2473 (quoting Bell v. Wolfish, 441 U.S. 520, 540, 547 (1979)). Notably, the Supreme Court has cautioned that "courts must heed [its] warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" Bell v. Wolfish, 441 U.S. 520, 570 n.23 (1979) (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)).

Factors that may be considered in determining whether a jail official's intentional use of force is constitutionally excessive include: "[(1)] the need for the application of force, [(2)] the relationship between the need and the amount of force that was used, [(3)] the extent of injury inflicted, and [(4)] whether force was applied in a good faith effort to maintain or restore discipline

or maliciously and sadistically for the very purpose of causing harm." Kingsley, 135 S. Ct. at 2476 (quoting Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973)). Under both the Due Process clause and the Eighth Amendment, "an excessive-force claimant must show something more than de minimus force." Leary v. Livingston Cty., 528 F.3d 438, 443 (6th Cir. 2008) (citing Hudson v. McMillian, 503 U.S. 1, 9–10 (1992) (Eighth Amendment), and Bell v. Wolfish, 441 U.S. 520, 539 n. 21 (1979) (Due Process Clause)); see Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."). Plaintiff's claims fail under either the Eighth Amendment or Fourteenth Amendment standard.

*1. HRRJ Handcuff Policy*

Plaintiff's claim that the policy of using handcuffs on all segregated inmates violates the Due Process Clause fails for several reasons. First, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Bell, 441 U.S. at 537. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539. Legitimate government interests include maintaining jail security and order and ensuring inmate safety, including segregating inmates from other inmates for safety reasons. See id. at 539–540, 546–547, 548 n. 29; see also Wetzel v. Hammond Police Dep't, No. CIV.A 09-0128, 2010 WL 450352, at *4 (E.D. La. Feb. 2, 2010) (concluding that defendant's handcuffing of a pretrial detainee while he was transported to a cell at the police department was justified by "a legitimate security interest."). In considering the reasonableness of restrictions, courts should defer to the expertise of jail officials absent "substantial evidence in the record to indicate that the officials have exaggerated their response" to the considerations that the restrictions seek to advance. Bell,

441 U.S. at 570 n.23 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)). Plaintiff concedes that HRRJ officers advised him that the jail policy requiring segregated inmates to wear handcuffs every time they leave their cells is "for [their] safety." Compl. ¶¶ 22, 23. This policy was not an exaggerated response to legitimate safety concerns; by plaintiff's own admission, the use of handcuffs was limited to the period when he was being transported from one location to another, and plaintiff does not allege that he remained handcuffed once he was placed in protective custody. Therefore, plaintiff has not proffered "substantial evidence," or any credible evidence at all, to indicate that the policy in question is an "exaggerated" response to the valid considerations of safety and security.

2. *Protective Custody Conditions*

Similarly, plaintiff's claim that the HRRJ jail policy of "treat[ing] all segregated inmates as though they were in disciplinary segregation" constituted punishment of a pretrial detainee, in violation of the Due Process Clause must also fail. As discussed above, jails have legitimate interests in maintaining jail security and ensuring inmate safety, including segregating inmates from other inmates for safety reasons. See Bell, 441 U.S. at 539–540, 546–547, 548 n.29. Jail policies reasonably related to the legitimate institutional interests they are intended to advance do not, "without more, amount to 'punishment.'" Id. at 539. To be sure, a restriction related to a legitimate goal such as institutional security may still be punitive if it is excessively harsh, such that the conditions would not support a conclusion that they were intended to do anything other than punish an inmate. See id. at 539 n.20 ("[L]oading a detainee with chains and shackles and throwing him in a dungeon may ensure his presence at trial and preserve the security of the institution. But it would be difficult to conceive of a situation where conditions so harsh, employed to achieve objectives that could be accomplished in so many alternative and less harsh

methods, would not support a conclusion that the purpose for which they were imposed was to punish.").

Plaintiff's argument that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically,'" is inapplicable to this claim because plaintiff was not being punished when he was placed into protective custody. Plaintiff admits that "[o]n or about March 10th, 2014, [he] made a complaint to the officer on duty that his cellmate had made threats to him and asked what could be done to move into a different cell."[1] Compl. ¶ 10. The officer reported plaintiff's complaint to his supervisors, who came to plaintiff's cell "to speak to Plaintiff and his cellmate." Compl. ¶ 11. Following their conversations with the prisoners, the jail officials ordered plaintiff to go to the gym by himself, and twenty minutes later he was taken to segregation, where he was subjected to "23 hour lockdown on weekdays and 24 hour on weekends, no phone calls, showers 3 times a week and the use of hand cuffs every time he left the cell and the loss of all privileges that population inmates receive." Compl. ¶¶ 13–25, 32. Plaintiff was released from segregation when he was transferred to the Newport News City Jail. Compl. ¶ 34. Based on these facts, it is clear that plaintiff's transfer to protective segregation resulted from an individualized investigation into plaintiff's complaint about his cellmate, which included a discussion with both plaintiff and his cellmate. Indeed, nothing in the complaint, apart from plaintiff's conclusory allegations, suggests that plaintiff was placed in segregation for punitive reasons. Moreover, nothing suggests that plaintiff's placement in segregation was excessively harsh. To be sure, the conditions to which plaintiff was subjected in protective

---

[1] Plaintiff alleges that when he spoke to the institutional supervisors he at "no point said he felt threatened, merely that threats had been made." Compl. ¶ 12. With respect to this assertion, the Court agrees with defendants that such a proclamation "parses semantics." Even though the standard of review requires that all reasonable inferences be drawn in plaintiff's favor, it defies common sense to conclude that plaintiff inquired into moving cells after threats were made, but he did not feel threatened.

custody were more restrictive than those he faced while housed in the general population, but such conditions were "incident of some other legitimate governmental purpose," namely institutional security and plaintiff's safety. Bell, 441 U.S. at 538. Without more, such conditions do not rise to the level of punishment.[2] See Cabral v. Strada, 513 Fed. Appx. 99, 103 (2d Cir. 2013) (rejecting substantive due process claim where pretrial detainees were placed in segregated housing unit after prison officials received reports from confidential informants that, inter alia, a "green light" had been issued by rival gang members to physically attack the detainees on sight in the prison).

3. *Defendant Whitehead's Use of Forcible Restraint*

Finally, plaintiff fails to state a claim for excessive force against Whitehead because Whitehead's actions were objectively reasonable and any force applied to plaintiff was de minimus. Plaintiff alleges that defendant Whitehead came to the gym door to retrieve plaintiff after plaintiff had been moved due to his cellmate threatening him. Compl. ¶¶ 10-14. Whitehead allegedly "yell[ed]" an order for plaintiff to "turn around" and instructed him to put his hands behind his back and through the hole in the door. Compl. ¶ 14. When plaintiff placed his hands through the hole, Whitehead allegedly "yanked the Plaintiff's hands fully through and handcuffed them." Compl. ¶ 16. Plaintiff states that Whitehead then "opened the gym door and pulled the Plaintiff through." Compl. ¶ 17. Based on these facts, Whitehead's actions were objectively reasonable. Some minimal amount of force was required for Whitehead to place the handcuffs around plaintiff's wrists. Indeed, Whitehead had to grab plaintiff's hands, steady them, and apply the handcuffs. That is precisely what he did: plaintiff does not contend that Whitehead continued

---

[2] Because plaintiff's protective segregation does not amount to punishment, he was not entitled to procedural due process protections before his segregation. See Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (a prisoner is entitled to procedural protection from the arbitrary imposition of punishment by prison officials).

to apply force to plaintiff after he had been handcuffed and walked through the gym door. In addition, any force used by Whitehead was de minimus. Plaintiff concedes that Whitehead used "a relatively small amount of force . . . against him." Dkt. No. 32 at 6. Even without plaintiff's admission, greater uses of force have been found to be de minimus under the Due Process clause. Tierney v. Davidson, 133 F.3d 189, 199 (2d Cir.1998) (grabbing plaintiffs arm to move her out of doorway and hitting plaintiff once with a nightstick was de minimus force under Due Process Clause). Therefore, plaintiff has failed to state a claim for which relief can be granted against Whitehead.

### B. Retaliation

Plaintiff contends that he was retaliated against for "utiliz[ing] the inmate grievance system to complain of problems faced at [HRRJ]." Dkt. No. 6 at 4. Plaintiff argues that he has sufficiently pleaded a retaliation claim because (1) he utilized the jail grievance procedure, which the "courts have consistently held . . . are constitutionally protected," (2) his grievances, on information and belief, "made their way to defendant Simons" through the HRRJ grievance policy, and (3) he was subjected to excessive force as a result of his use of the inmate grievance process. Id. at 4. In particular, plaintiff alleges that that because "courts have held that placement of an inmate in segregation sufficiently supports a claim of retaliation," he has satisfied the pleading standard. Id. at 5. In addition, plaintiff contends that "[i]t is well established that pretrial detainees may not be punished;" therefore, jail officials may not advance "any 'penological objectives,' 'legitimate' or otherwise, without violating the Due Process Clause of the Fourteenth Amendment." Id. Finally, plaintiff alleges that he has suffered an adverse impact to several rights as a result of defendants' actions: the "right to be free from excessive force," the "right to be free from the arbitrary application of restraints," the right "to due process in connection with

13

placement in segregation," the right "to be free from punishment prior to an adjudication of guilt," the right "to petition the Government for a redress of grievances," and the "right to phone access." Dkt. No. 32 at 8–9. In plaintiff's view, "suspect timing" and "placement in segregation" are sufficient to support a claim for retaliation and the "short period of time" between the filing of the grievance and plaintiff's placement in segregation is sufficient to show a causal nexus between the two. Dkt. No. 32 at 10.

To state a claim for retaliation in violation of the First Amendment a plaintiff must meet a number of pleading requirements. First, an inmate must show that the allegedly "retaliatory act violated some constitutional right of an inmate or constituted punishment for the exercise of a constitutional right." Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996). Importantly, the inmate must allege facts demonstrating that his or her exercise of some constitutional right was a "substantial" or "motivating factor" for the retaliatory act. See Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). Second, the inmate must show a sufficiently adverse impact on a constitutional right as a result of retaliation. ACLU of Md. Inc. v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993). If a plaintiff has not alleged impairment of his or her constitutional rights, "there is no need for the protection provided by a cause of action for retaliation;" therefore, a showing of adversity is essential to any retaliation claim. Id. Finally, plaintiff must demonstrate that prison officials' actions "did not advance legitimate penological objectives." Talbert v. Hinkle, 961 F. Supp. 904, 911 (E.D. Va. 1997). The Fourth Circuit has commented that retaliation claims by prisoners should be treated with skepticism, Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Moreover, bare and conclusory assertions and "mere labeling of an action as retaliation" are not sufficient to support a § 1983 claim. Cooper v. Duncan, 2017 WL 2271501, at *2, n.2 (W.D. Va. May 23, 2017) (distinguishing the "conclusory retaliation claim, constructed

entirely of unsupported assertions and not facts" from the "detailed factual allegations" in Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540 (4th Cir. 2017)).

As set forth above in greater detail, plaintiff failed to demonstrate that HRRJ's policy or Whitehead's actions "violated some constitutional right" under the Due Process Clause,[3] and he failed to allege sufficient facts to show that he was placed in protective custody as punishment for exercising a constitutional right. Moreover, plaintiff's contention that he was denied the right "to petition the Government for a redress of grievances" is belied by the fact that he has filed the instant lawsuit.[4] ACLU of Md., Inc. v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993)

Nor has plaintiff alleged any facts that Simons was involved in or had knowledge of the events that allegedly occurred on March 10, 2014, or that he took any action that adversely affected plaintiff's constitutional rights. Similarly, plaintiff has failed to allege that Whitehead knew of the grievances allegedly filed in the unspecified time-period leading up to the plaintiff's segregation. Plaintiff's conclusory allegation, based on "information and belief," that Simons knew about plaintiff's grievances concerning "an array of problems" throughout his detention is insufficient to state a claim on which relief can be granted. Even if Simons had been aware of the alleged grievances, plaintiff does not allege that any defendant interfered with his right to redress grievances against the government, and the only statement that could be construed as such is the vague assertions that plaintiff "attempted to exhaust his administrative remedies while in

---

[3] Plaintiff's allegations that he was deprived of the "right to be free from excessive force," the "right to be free from the arbitrary application of restraints," the right "to due process in connection with placement in segregation," the right "to be free from punishment prior to an adjudication of guilt," are all purported violations of plaintiff's rights under the Due Process Clause stated in different ways.

[4] Despite plaintiff's assertions to the contrary, the Fourth Circuit has observed that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

15

segregation, but was never given a response" and he "could not follow through with the grievance procedure after he left the HRRJ." Compl. ¶ 35.

Plaintiff attempts to prove a connection between his segregation and the grievances he allegedly filed by alleging that the "suspect timing" of his "placement in segregation," and the "short period of time" between the filing of his grievance is sufficient to support a claim for retaliation. Dkt. No. 32 at 10. Yet, plaintiff provides no information concerning the number of grievances he filed, when he filed those grievances, why he filed those grievances, or how they were related to his placement in protective segregation. See Compl. ¶¶ 7–8. Indeed, the timing of plaintiff's placement in segregation demonstrates that jail staff relocated plaintiff because plaintiff complained that his cellmate had threatened him, as he was moved directly after reporting to the threats to staff. Id. ¶ 10-21. As to the third element of his retaliation claim, the circumstances surrounding plaintiff's relocation and the statements of jail employees, demonstrate that plaintiff was relocated to promote institutional safety. Plaintiff's claim that he was denied his "right" to use the telephone also must fail because "there is no constitutional or federal statutory right to use a telephone while in prison." United States v. Alkire, 82 F.3d 411 (4th Cir. 1996). Therefore, plaintiff has failed to state a claim for retaliation and his retaliation claim must be dismissed with prejudice.

### C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity on plaintiff's Fourteenth Amendment and excessive force claims. Plaintiff responds that because "HRRJ is a private facility," qualified immunity is not available to the defendants. Dkt. No. 32 at 10. Plaintiff further contends that qualified immunity would be unavailable to defendants because they have too narrowly defined the constitutional right asserted by defendant as the "right for a pretrial

detainee in segregation or protective custody to be free from handcuffs when being transported." Id. According to plaintiff, "it is long settled that the concept of Due Process encompasses a wide range of protections," that include the right to be free from bodily restraint absent some kind of procedural process or government need. Id.

Plaintiff's contention that HRRJ is a "private facility" is incorrect. HRRJ is a regional jail authority created by the City of Chesapeake, the City of Hampton, the City of Newport News, the City of Norfolk, and the City of Portsmouth, which are political subdivisions of the Commonwealth. See Marcus Cable Assocs., L.L.C. v. City of Bristol, Virginia, 237 F. Supp. 2d 675, 678 (W.D. Va. 2002) (stating that cities are political subdivisions of the Commonwealth); Va. Code § 53.1-95.2 ("The governing bodies of two or more counties, cities, or towns or a combination thereof may by concurrent ordinances or resolutions or by agreement, create a jail authority."). Simons, who is superintendent of a HRRJ and was appointed by the HRRJ jail authority, is a government employee who exercises the same control and authority over the prisoners as a sheriff has over his or her jail. See Va. Code § 53.1-95.8. Whitehead is an employee at the HRRJ. As employees of a subdivision of the Commonwealth, Simons and Whitehead are entitled to the protections of qualified immunity. See Procunier v. Navarette, 434 U.S. 555, 561-562 (1978) (extending qualified immunity to state prison guards).

The doctrine of qualified immunity protects government officials from liability in civil actions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In doing so, it balances two important interests: the need to hold government officials accountable for irresponsible exercises of power, and the need to shield those same officials from "harassment, distraction, and liability," when they

act responsibly. Id. Whether a government official may be held liable for the use of excessive force in violation of the Due Process Clause of the Fourth Amendment turns on the objective legal reasonableness of the action in light of contemporaneous, clearly established legal rules. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2474 (2015). For a legal rule to be clearly established in this context "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In other words, "in the light of pre-existing law the unlawfulness must be apparent," id., and "beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Significantly, the Supreme Court has repeatedly instructed federal courts "not to define clearly established law at a high level of generality." Id. at 743. Therefore, any right alleged to have been violated "must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Layne, 526 U.S. at 615.

It cannot be said that the actions of Whitehead or Simon were unlawful "beyond debate" in light of existing law. The conduct at issue, specifically defined, is whether the use of handcuffs while transporting a pretrial detainee from general population to segregation constitutes excessive force under the Due Process clause of the Fourteenth Amendment and whether the placement of an inmate in protective custody in light of threats admittedly made to him constitutes a violation of the Due Process Clause of the Fourteenth Amendment. As set forth in further detail above, the case law establishes that the use of handcuffs to transport a pretrial detainee to and from protective custody does not infringe the detainee's constitutional rights. Similarly, the placement of an inmate in protective custody due to a threat, even if the inmate is subjected to restrictive conditions, does not violate the Due Process Clause of the Fourteenth Amendment. Putting that aside, the controlling case law as of March 2014 certainly would not have made it evident to a

reasonable officer in Virginia that restraining plaintiff with handcuffs while transporting him from general population to segregation and placing him in protective custody violated his due process rights.

### D. Plaintiff's Request to Amend his Complaint

In the final section of his reply brief, plaintiff contends that "the Court screened [his] complaint under the wrong legal standard," and he "did not amend his complaint because he felt the law required him to seek reconsideration." Dkt. No. 32 at 11–12. In plaintiff's view, had he proceeded by amending his complaint it "would have been reviewed under an Eighth Amendment standard and accordingly dismissed because he did not allege a 'malicious and sadistic intent to harm.'" Id. at 12. Plaintiff further contends that he avoided "unnecessary appellate proceedings" and saved $400 in filing fees by declining to amend his complaint. Id. Plaintiff alleges that, pursuant to Federal Rule of Civil Procedure 15(a), he is entitled to amend his complaint once "as a matter of course," and therefore, he "should be granted leave to file an amended complaint in the event that the Court here disagrees with the plaintiff and finds that his complaint, liberally construed does not state claim." Id.

Plaintiff misconstrues Rule 15. Pursuant to Rule 15, a plaintiff may amend his or her pleading as a matter of course "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Plaintiff's complaint was served on the defendants by Order dated January 13, 2017, and defendants filed a motion to dismiss pursuant to Rule 12(b)(6) roughly two months later on March 14, 2017. Plaintiff did not file an amended complaint within twenty one days of March 14, 2017, and the first time he expressed a desire to do so was in his "Plaintiff's Opposition to Defendants' Motion to Dismiss"

19

dated August 16, 2017. Accordingly, plaintiff is no longer entitled to amend his complaint as a matter of course. Significantly, an initial order was entered on April 7, 2017, pointing out apparent deficiencies in the complaint and allowing plaintiff an opportunity to file a particularized and amended complaint, but plaintiff declined to take advantage of this opportunity. Because an amendment of the complaint, at this juncture, would amount to affording plaintiff a second bite at the apple, the Court declines to grant him leave to do so.

## V. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss will be granted, and the complaint will be dismissed. An appropriate Order and Judgment shall issue.

Entered this 21st day of Feb. 2018.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge